**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Plaintiff
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
Phone:  (646) 593-8866
Fax:     (212) 618-0213
E-mail: rwanchoo@wanchoolaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

NIMEX PETROLEUM LIMITED

                 Plaintiff,

        - against -

RAF RAF SHIPPING INC., and
UNION SEA GROUP LTD.

             Defendants.

------------------------------------------------------------X

ECF CASE

08 Civ. 7002 (SAS)

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR AN ORDER
OF MARITIME ATTACHMENT AND GARNISHMENT
PURSUANT TO RULE B(1) OF THE SUPPLEMENTAL
RULES FOR CERTAIN ADMIRALTY AND MARITIME
CLAIMS OF THE FEDERAL RULES OF CIVIL PROCEDURE**

**PRELIMINARY STATEMENT**

Plaintiff, NIMEX PETROLEUM LIMITED ("Plaintiff"), respectfully submit this

Memorandum of Law in support of its application for an order directing the Clerk of the Court to

issue Process of Maritime Attachment and Garnishment pursuant to Rule B(1) of the

Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil

Procedure in connection with Plaintiff's admiralty and maritime claims in the amount of

$2,589,990.78 (U.S. Dollars Two Million Five Hundred Eighty Nine Thousand Nine Hundred

Ninety and Cents Seventy Eight) resulting from breach of a charter party.

## STATEMENT OF FACTS

On or about January 28, 2008, a time charter party (the "Charter") was made between

Plaintiff, as charterer of the Vessel, and Raf Raf as owner whereby Plaintiff chartered the

Vessel for the carriage of bitumen for a period of 6 + 6 months, in charterer's option

commencing from the time and date of delivery of the Vessel.

Specifically, Plaintiff chartered the Vessel to carry Bitumen from Singapore to Haldia,

India.  The Charter provides that:

> "1.      At the date of delivery of the vessel under this charter and throughout the
> charter period...
> (b) she shall be in every way fit to carry BITUMEN;
> (c) she shall be tight, staunch, strong, in good order and condition, and in every
> way fit for the service, with her machinery, boilers, hull and other equipment ...
> in a good and efficient state ...
>
> 3.      (a) Throughout the charter service Owners shall, whenever passage of
> time, wear and tear or any event ... requires steps to be taken to maintain or
> restore the conditions stipulated in Clauses 1 and 2(a), exercise due diligence so to
> maintain or restore the vessel.
>
> 4.      (a) Owners agree to let and the charterers agree to hire the vessel for a
> period of 6 mnths plus 6 mnths in Charterers' option, commencing from the time
> and date of delivery of the vessel, for the purpose of carrying all lawful
> merchandise (subject always to Clause 28) including in particular; East of Suez,
> Full African Coastline, UK CONT Mediterranean, Black Sea Excluding
> Bangladesh, Iraq, Iran, Israel as Charterers shall direct, subject to the limits of the
> current British Institute Warranties and any subsequent amendments thereof."

The Charter also provides that the charterer shall pay for the use and hire of the Vessel at the rate of $4,050 per day for the first six months, and, $4,150 per day for the second six months. The payment of hire for the first one month was to be paid in advance, before sailing from Singapore. Thereafter, consecutive payments were to be made by "27th of running month." Clause 9 of the Charter provides that the payment of hire was to be made to Union Sea's bank account at UBS AG, Singapore, as named beneficiary. On or about January 29, 2008, Plaintiff deposited in Union Sea's bank account first 90 days of Charter hire in the amount of $364,500.00.

The Vessel was delivered to Plaintiff at Singapore on January 29, 2008. On or about March 18, 2008, the Vessel suffered ingress of water into her engine room at Famagusta in Northern Cyprus. Due to the ingress of water, damage was caused to the Vessel's stern tube, hull, and consequently the Vessel become unseaworthy. Instead of the Vessel being dry-docked in the Mediterranean to make the Vessel seaworthy, Defendant ordered the Vessel to Chittagong, Bangladesh for repairs. However, having diverted the Vessel to Chittagong in order to be repaired at dry dock, the Vessel was not in fact dry-docked. Rather, in repudiatory breach of the Charter, the Vessel was traded locally (in the Bay of Bengal) to other charterers without Plaintiff's knowledge or consent, and whilst the Vessel ought to have been being repaired in dry dock. Despite numerous requests made by the Plaintiff, Defendant has not restored the Vessel to a seaworthy condition. Accordingly, Plaintiff placed the Vessel off-hire since March 18, 2008 when the Vessel suffered ingress of water.

The Defendant is in continuing breach of clauses 1, 3(a) and 4 of the Charter.

By reason of the premises, Plaintiff has sustained the following damages, as best as can be presently calculated:

3

| | | |
|---|---|---|
| a) | Hire Overpaid | $179,395.28 |
| b) | Liabilities to suppliers arising out of cancelled voyages | $177,324.00 |
| c) | Charges for the Defendant's account | $ 47,839.00 |
| d) | Bunkers used other than in performance of Plaintiff's order | $ 27,426.30 |
| e) | Loss of profit on voyages for the first six months. | $544,354.83 |
| f) | Loss of profit for the further six months of the Charter period. | $750,000.00 |
| | Total | **$1,726,339.41** |

In addition to its principal claim, Plaintiff is also entitled, in London, to attorneys' fees and other taxable costs incurred or likely to be incurred in bringing this claim, which as best as can presently be calculated are $587,437.06. (See Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 265 (2d Cir. 2002), where the attachment that the Court of Appeals reinstated covered "an amount that includes interest and anticipated attorneys' and arbitrators' fees.")

Litigation of these disputes in London may take up to two years. Plaintiff is entitled to and would receive compound interest at 8% per annum from August 1, 2008 to July 31, 2010 to the completion of the litigation of about $276,214.31.

Plaintiff's total claim against Defendant for which it seeks security herein is $2,589,990.78 ($1,726,339.41 + $587,437.06 + $276,214.31).

Upon information and belief, Raf Raf uses Union Sea as "paying beneficiary" or "pass through" entity such that it can insulate itself from creditors relating to its contracts.

It is not general practice in the maritime community, nor anywhere else, for independent companies to make large payments on behalf of other independent companies.

Payments sent or received on behalf of another independent company are suggestive of a relationship that is not "arms length".

Upon information and belief, Union Sea is not only the holding parent of Raf Raf but is also the alter-ego of Raf Raf because it dominates and disregards Raf Raf's corporate form to the extent that Union Sea is carrying on Raf Raf's business and operations as if the same were its own, or vice versa.

Upon information and belief, Raf Raf has no separate identity from Union Sea.

In the further alternative, Raf Raf and Union Sea are partners and/or joint ventures.

All and singular the premises are true and within the admiralty and maritime jurisdiction of this Honorable Court.

Plaintiff brings this action by seeking an order of seizure of Defendant and Union Sea's goods and chattels, or credits and effects in the hands of garnishees to be named in the process, in the amount sued for herein, so that the Court shall have jurisdiction to direct Defendant to proceed with arbitration of Plaintiff's claim against Defendant and to retain jurisdiction to enter a judgment upon the decree in the London litigation.

As a result of the foregoing, Plaintiff asserts a claim in the amount of $2,589,990.78 for hire overpaid, liabilities to suppliers, charges for the Defendant's account, et al, attorneys' fees and costs and interest in the London arbitration, as nearly as can be estimated at present.

## ARGUMENT

### POINT I

#### AN ORDER AUTHORIZING THE ISSUANCE OF PROCESS OF MARITIME ATTACHMENT SHOULD BE GRANTED PURSUANT TO SUPPLEMENTAL RULES B (1) TO ALLOW ATTACHMENT OF DEFENDANT'S ASSETS IN THE HANDS OF NON-PARTIES TO THIS ACTION

Rule B (1) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the

Federal Rules of Civil Procedure ("Supplemental Rule B (1)"), specifically permits prejudgment

attachment in admiralty or maritime cases whenever the defendant cannot be "found" with the

district:

> With respect to any admiralty or maritime claim *in personam* a
> verified complaint may contain a prayer for process to attach the
> defendant's good and chattels, or credits and effects in the hands of
> garnishees to be named in the process to the amount sued for, if the
> defendant shall not be found within the district. Such a complaint
> shall be accompanied by an affidavit signed by the plaintiff or
> plaintiff's attorney that, to the affiant's knowledge, or to the best of
> the affiant's information and belief, the defendant cannot be found
> within the district. The verified complaint and affidavit shall be
> reviewed by the court and, if the conditions set forth in this rule
> appear to exist, an order so stating and authorizing process of
> attachment and garnishment shall issue.

Plaintiff's claim arises under a charter party which is a maritime contract and, therefore,

is a claim within the admiralty jurisdiction of this Court. G. Gilmore & C. Black, The Law of

Admiralty 22, n. 65 (2d ed. 1975); 1 Benedict On Admiralty § 184 at 12-11 (7th rev. ed. 2002).

Because Plaintiff possesses a maritime claim, it may secure a maritime attachment pursuant to

Supplemental Rule B (1) against all assets and property (up to the amount of the claim)

belonging to Defendant which may be situated within the district "if the defendant(s) shall not be

found within the district". Supplemental Rule B (1).

For purposes of Supplemental Rule B(1), the term "found within the district" presents a

two-pronged inquiry. If the defendants cannot be found within the district for jurisdictional

purposes and for service of process, an attachment is permissible. See Seawind Compania, S.A.

v. Crescent Line, Inc., 320 F.2d 580, 582 (2d Cir. 1963); see also 29 Moore's Federal Practice §

705.02 [2][b] (Matthew Bender 3d ed.).  As explained in the accompanying Affidavit of Rahul

Wanchoo, Defendants cannot be found within this District Court under this analysis.

Accordingly, the issuance of an order of maritime attachment is proper.

Rule B attachment is also proper in aid of foreign litigation or arbitration. Polar Shipping

Ltd. v. Oriental Shipping Corp., 680 F.2d. 627, 632 (9th Cir. 1982); Staronset Shipping Ltd. v.

North Star Navigation Inc., 659 F. Supp. 189, 191 (S.D.N.Y. 1987); Andros Compania

Maritima,S.A. v. Andre and Cie, S.A., 430 F. Supp. 88 (S.D.N.Y. 1977).  See also Drys Shipping

Corp. v. Freight of the M.S. DRYS, 558 F.2d 1050 (2ds Cir. 1977).  Maritime attachment and

garnishment is available not only against an account maintained by a defendant in New York, but

also against any correspondent bank which is used to transfer funds of a defendant's in or out of

New York.  Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263 (2d Cir. 2002).

## POINT II

### AN ORDER AUTHORIZING THE ISSUANCE OF PROCESS OF MARITIME ATTACHMENT SHOULD IN ADDITION TO PLAINTIFF'S PRINCIPAL CLAIM ALSO INCLUDE INTEREST, COSTS AND ATTORNEYS' FEES

Plaintiff seeks to attach Defendants' assets in the hands of non-parties.  In order to attach

Defendants' assets in the hands of non-parties, an order of attachment and garnishment is

required.  An Order authorizing the issue of maritime attachment is based not only on the

principal amount of the claim but also for interest, attorneys' fees and other taxable costs incurred

or likely to be incurred in bringing this claim in London against the Defendant. See, e.g., Consub

Delaware LLC v. Schahin Engenharia Limitada, 476 F.Supp.2d 305 (S.D.N.Y. 2007), Sonito

Shipping Company Ltd. v. Sun United Maritime Ltd., 478 F.Supp.2d 532 (S.D.N.Y. 2007), and

T&O Shipping Ltd. v. Lydia Shipping Co. S.A., 415 F.Supp.2d 310 (S.D.N.Y. 2006). Plaintiff

therefore requests that the Court issue an order authorizing process of maritime attachment and garnishment in order to secure Plaintiff's claims against Defendants in the London arbitration in the amount of $2,589,990.78 (U.S. Dollars Two Million Five Hundred Eighty Nine Thousand Nine Hundred Ninety and Cents Seventy Eight), as nearly as can be estimated at present.

## CONCLUSION

By reason of the foregoing, it is respectfully submitted this Court should issue an Order authorizing the issuance of Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B(1) and Plaintiff should have such other and further relief as is just and proper in the circumstances.

Dated: New York, New York
      August 5, 2008

Respectfully submitted,

**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Plaintiff
NIMEX PETROLEUM LIMITED.

By: _____
      Rahul Wanchoo (RW-8725)